UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APRIL GRANT,
VELISIA LEGRAND and
ROBERT HOULE,
on Behalf of Themselves and
All Others Similarly Situated,

                    Plaintiffs,                  No. 04-CV-72734-DT

vs.                                  Hon. Gerald E. Rosen

TRINITY HEALTH-MICHIGAN,
TRINITY HEALTH CORPORATION,
and JOHN DOES 1 THRU 10,

                    Defendants.
_____/

OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____September 30, 2005_____

PRESENT:  Honorable Gerald E. Rosen
                  United States District Judge

I.  INTRODUCTION

      Plaintiffs April Grant, Velisia Legrand and Robert Houle filed the instant action as

a class action complaint against Trinity Health-Michigan and Trinity Health Corporation

1

(collectively "Trinity Health"), the American Hospital Association (the "AHA"),[1] and ten "John Doe" defendants.  At the heart of Plaintiffs' Complaint are allegations that the Trinity Health, a "charitable organization" as defined in 26 U.S.C. § 501(c)(3), charges uninsured patients significantly more for medical services than it charges insured patients and engages in "aggressive, abusive and humiliating collection practices" to recover medical debts.  In their Complaint, Plaintiffs allege ten claims against the Trinity Health Defendants: (1) a third-party beneficiary claim for breach of contract between Trinity Health and the federal government under 26 U.S.C. § 501(c)(3); (2) breach of contract; (3) breach of duty of good faith and fair dealing; (4) breach of charitable trust; (5) violation of the Michigan Consumer Protection Act, M.C.L. § 445.901, *et seq.*; (6) violation of the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd ("EMTALA"); (7) unjust enrichment/constructive trust; (8) a claim for injunctive/declaratory relief; (9) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a ("FDCPA"); and (10) a claim under 42 U.S.C. § 1983 for violation of the Plaintiffs' constitutional rights under the Fifth and Fourteenth Amendment.[2]

This matter is presently before the Court on the Trinity Health Defendants'

---

[1] Plaintiff voluntarily dismissed the American Hospital Association from this action on March 13, 2005.

[2]  The remaining counts in Plaintiffs' Complaint, Counts 11 and 12 contain claims asserted only against the AHA, which as noted above, have been voluntarily dismissed.

Motion to Dismiss Counts 1, 3, 4, and 7 which are all predicated upon Defendants'
alleged violation of 26 U.S.C. § 501(c)(3); and Plaintiffs other federal claims in Count 6
(violation of the EMTALA); Count 9 (violation of the FDCPA); and Count 10 (Section
1983 claims).  Defendants also urge the Court to decline to exercise supplemental
jurisdiction over Plaintiffs' state law claims.  Plaintiffs have responded to Defendants'
Motion and Defendants have replied.

Having reviewed and considered the parties' various briefs and notices of
supplemental authority, the Court has determined that oral argument is not necessary.
Therefore, pursuant to Local Rule 7.1(e)(2), this matter will be decided on the briefs.
This Opinion and Order sets forth the Court's ruling.

## II.  FACTUAL BACKGROUND[3]

Trinity Health Corporation operates thirty hospitals in seven states, including
seven hospitals in the State of Michigan.  St. Joseph Mercy Hospital is among the seven
Trinity Health hospital facilities in Michigan.

According to Plaintiffs' Complaint, at some unspecified point in time, Plaintiff
April Grant was admitted for treatment at St. Joseph Mercy Hospital through the
Emergency Room.[4]  At that time, Ms. Grant was unemployed and had no health

_____

[3]  The facts contained herein are those as alleged in Plaintiffs' Complaint.

[4]  The Complaint is silent not only with respect to when Plaintiffs allegedly
received medical treatment but also does not specify at which St. Joseph Mercy Hospital
(e.g., St. Joseph Mercy Hospital-Oakland; St. Joseph Mercy Hospital-Macomb; St.
Joseph Mercy Hospital-Ann Arbor) they were treated, why Plaintiffs sought treatment or

3

insurance.  She alleges that as a condition of her treatment, she was required to sign forms upon admission which guaranteed payment of any medical fees incurred.  She claims that Defendants billed her excessive and inflated rates for her medical care and after numerous allegedly harassing collection letters and phone calls, Trinity Health sued her and obtained a judgment for unpaid medical bills in the amount of $4,596.00. [*See* Complaint, ¶¶ 50-52.]

Plaintiff Velisia Legrand also alleges that she was admitted through the Emergency Room at St. Joseph Mercy Hospital and that after her treatment Trinity Health "aggressively pursued collection of inflated charges" from her and ultimately obtained a judgment against her in the amount of $1,177.00.  Her checking account was then garnished. [*Id.* ¶ 53.]

Plaintiff Robert Houle states that he was admitted to St. Joseph Mercy Hospital when he did not have health insurance.  Like Plaintiffs Grant and Legrand, Mr. Houle alleges that Defendants billed him inflated charges, sued him, obtained a judgment against him in the amount of $6,667.00, and then garnished his wages. [*Id.* ¶ 54.]

Plaintiffs do not challenge the quality of the medical care they received.  Rather, they claim that because the Internal Revenue Service has granted Trinity Health tax-exempt status under 26 U.S.C. § 501(c)(3), Defendants have a duty to provide free or discounted medical care to the uninsured and that Plaintiffs have a right to enforce this

what medical treatment they received.

4

duty.

### III.  PROCEDURAL BACKGROUND

This action is one of dozens of similar lawsuits filed in courts across the country

on behalf of uninsured and/or indigent patients.[5]  To date, in at least 29 such actions, the

district courts have granted the defendants' motions to dismiss.[6]  Several other cases have

---

[5] In October 2004, the Judicial Panel on Multi-District Litigation rejected a motion to transfer and consolidate the pending actions into one combined action.  *See In re Not-For-Profit Hospitals/Uninsured Patients Litigation*, 341 F. Supp. 2d 1354 (J.P.M.L. 2004).

[6]  *See Burton v. William Beaumont Hosp.*, 347 F. Supp. 2d 486 (E.D. Mich. 2004) and *Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707 (E.D. Mich. 2005); *Lorens v. Catholic Health Care Partners,* 356 F. Supp. 2d 827 (N.D. Ohio 2005);  *Shriner v. ProMedica Health System, Inc.*, 2005 WL 139128 (N.D. Ohio 2005); *Hagedorn v. St. Thomas Hosp., Inc.*, 04-0526 (M.D. Tenn., Feb. 7, 2005); *Darr v. Sutter Health*, 2004 WL 2873068 (N.D. Calif. 2004); *Ferguson v. Centura Health Corp.*, 358 F. Supp. 2d 1014 (D. Colo. 2004); *Hudson v. Central Georgia Health Services*, 04-CV-301 (M.D. Ga., Jan. 13, 2005); *Washington v. Medical Center of Central Georgia, Inc.*, 04-CV-185 (M.D. Ga., Jan. 21, 2005); *Hogland v. Athens Regional Health Services, Inc.*, 04-CV-50 (M.D. Ga., Jan. 21, 2005); *Daly v. Baptist Health*, 04-CV-789 (E.D. Ark., Jan. 31, 2005); *Peterson v. Fairview Health Services*, 2005 WL 226168 (D. Minn. 2005); *River v. Yale New Haven Hospital, Inc.*, 04-CV-1414 (D. Conn., Feb. 9, 2005) *Schmitt v. Protestant Memorial Medical Center, Inc.*, 04-00577 (S.D. Ill., Feb. 23, 2005); *Sabeta v. Baptist Hospital of Miami, Inc.*, 04-21437 (S.D. Fla., Feb. 23, 2005); *Wright v. St. Dominic Health Services, Inc.*, 04-CV-521 (S.D. Miss., Mar. 1, 2005); *Quinn v. BJC Health System*, 364 F. Supp. 2d 1046 (E.D. Mo. 2005); *Carlson v. Long Island Jewish Medical Center*, 378 F. Supp. 2d 128 (E.D.N.Y. 2005); *Jellison v. Florida Hospital Healthcare System, Inc.*, 04-CV-1021 (M.D. Fla., Mar. 14, 2005); *Kolari v. New York-Presbyterian Hosp.,* ___ F. Supp. 2d ___, 2005 WL 710452 (S.D.N.Y. 2005); *Valencia v. Mississippi Baptist Medical Center, Inc.*, 363 F. Supp. 2d 867 (S.D. Miss. 2005); *Watts v. Advocate Health Care Network*, 04-CV-4062 (N.D. Ill., Mar. 30, 2005) *Corely v. John D. Archibold Memorial Hosp., Inc.*, 04-CV-110 (M.D. Ga., Mar. 31, 2005); *Fields v. Banner Health*, 04-CV-1297 (D. Ariz., Mar. 23, 2005); *Ellis v. Phoebe Putney Health Sys., Inc.*, 04-CV-80 (M.D. Ga., Apr. 8, 2005); *Bobo v. Christus Health*, 227 F.R.D. 479 (E.D. Tex. 2005); *Amato v. UPMC*, 371 F. Supp. 2d 752 (W.D. Pa. 2005); *Gardner v. North*

been voluntarily dismissed prior to a ruling on a motion to dismiss.[7]   No court has yet to

find in favor of the plaintiffs on any substantive legal issue.   Although the Court will

decide this specific case on its own merits, it finds the legal analysis from the other

dismissals persuasive.

## IV.   DISCUSSION

A.   STANDARDS APPLICABLE TO MOTIONS TO DISMISS PURSUANT TO
     FED. R. CIV. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) allows the court to determine the legal sufficiency of a

plaintiff's claims.  *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  Courts

considering a Rule 12(b)(6) motion must accept the well-pled factual allegations of the

complaint as true and construe all reasonable inferences in favor of the plaintiff.  *See*

*Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).  However, the court is not required to

accept conclusions of law or unwarranted inferences of fact cast in the form of factual

allegations.  *Blackburn v. Fisk University*, 443 F.2d 121, 123 (6th Cir. 1971).

Accordingly, a court must determine "whether the plaintiff undoubtedly can prove no set

_____

*Mississippi Health Serv., Inc.*, ___ F. Supp. ___, 2005 WL 1312753 (N.D. Miss. 2005);
*McCoy v. East Texas Medical Ctr.*, ___ F. Supp. 2d ___, 2005 WL 2105966 (E.D. Tex.
2005); *Jakubiec v. Sacred Heart Health Sys.,* 2005 WL 1261443 (N.D. Fla., May 27,
2005).

[7]  *See Shipman v. Inova Health Care Services, et al.,* No. 04-CV-910 (E.D. Va.,
filed 8/6/04); *Woodrum v. Integris Health, Inc.*, No. 04-CV-00835 (W.D. Okla., filed
7/7/04); *Kelly v. Northeast Georgia Med. Ctr.,* No. 04-CV-00139 (N.D. Ga., filed
7/21/04); *Frimpong v. DeKalb Med. Ctr.,*, 04-CV-01745 (N.D. Ga., filed 6/16/04);
*Maldonado v. Ochsner Clinic Fdn.*, No. 04-CV01987 (E.D. La., filed 7/15/04).

of facts in support of his claims that would entitle him to relief" under a viable legal

theory advanced in the complaint. *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d

1101, 1109 (6th Cir. 1995), *cert. denied*, 116 S.Ct. 1041 (1996).

B.      SECTION 501(c)(3) DOES NOT CREATE A CONTRACT

Counts 1, 3, 4, and 7 of Plaintiffs' Complaint are all predicated upon Plaintiffs'

assumption that Trinity Health's acceptance of tax exempt status under Section 501(c)(3)

of the Internal Revenue Code, 26 U.S.C. § 501(c)(3),[8] creates a contract between Trinity

Health and the U.S. Government.

1.      THIRD-PARTY BREACH OF CONTRACT

In Count 1, Plaintiffs claim that they are third-party beneficiaries of an express or

implied contract between Trinity Health and the United States Government under which

the Government granted Trinity Health status as a tax exempt "charitable" institution

---

[8] Section 501exempts certain organizations from taxation including

(3) Corporations and any community chest, fund, or foundation organized
and operated exclusively for religious, charitable, scientific, testing for
public safety, literary, or educational purposes, or to foster national or
international amateur sports competition (but only if no part of its activities
involve the provision of athletic facilities or equipment), or for the
prevention of cruelty to children or animals, no part of the net earnings of
which inures to the benefit of any private shareholder or individual, no
substantial part of the activities of which is carrying on propaganda, or
otherwise attempting, to influence legislation (except as otherwise provided
in subsection (h)), and which does not participate in, or intervene in
(including the publishing or distributing of statements), any political
campaign on behalf of (or in opposition to) any candidate for public office.

26 U.S.C. § 501(c)(3).

pursuant to 26 U.S.C. § 501(c)(3) in exchange for Trinity Health agreeing to operate for charitable purposes and to provide mutually affordable medical care to uninsured patients without regard to their ability to pay for such care. Claiming that Trinity Health breached its contract with the United States, Plaintiffs contend that they did not receive the benefit of that agreement.

No court, however, has ever held that 501(c)(3) creates a binding contract, and the numerous courts which have considered this issue in the context of virtually identical allegations to those made by Plaintiffs in this case have uniformly rejected this notion. *See e.g., Burton v. William Beaumont Hospital*, 347 F. Supp. 2d 486, 492-94 (E.D. Mich. 2004); *Lorens v. Catholic Health Care Partners*, 356 F. Supp. 2d 827, 831-34 (N.D. Ohio 2005); *Kolari v. New York-Presbyterian Hosp.*, ___ F. Supp. 2d ___, 2005 WL 710452 at **5-6(S.D.N.Y. 2005); *Amato v. UPMC*, 37 F. Supp. 2d 752, 755-756 (W.D. Pa. 2005); *North Mississippi Health Serv., Inc.*, ___ F. Supp. 2d ___, 2005 WL 1312753 at **2-3 (D.D. Miss. 2005); *Peterson v. Fairview Health Services*, 2005 WL 226168 at **3-7 (D. Minn. 2005); *Darr v. Sutter Health*, 2004 WL 2873068 at **3-5 (N.D. Cal. 2004); *Ferguson v. Centura Health Corp.*, 358 F. Supp. 2d 1014, 1016-19 (D. Colo. 2004); *Gardner v. McCoy v. East Texas Medical Ctr.*, ___ F. Supp. 2d, ____, 2005 WL 2105966 at **3-6 (E.D. Tex. 2005). *See also, McLaughlin v. Commissioner of IRS*, 832 F.2d 986, 987 (7th Cir. 1987) ("the notion that the Federal Income Tax is contractual or otherwise consensual in nature is not only utterly without foundation but. . . has been

repeatedly rejected by the courts.")  As the various courts addressing not-for-profit/uninsured patient complaints have reasoned, without language in the tax-exempt statute indicating Congressional intent to create a contract, the presumption is that statutes are not, and do not create, contracts.  *See Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 465-66, 105 S.Ct. 1441, 1451-52 (1985):

> [A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise. . . .  This well-established presumption is grounded in the elementary proposition that the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state.  Policies, unlike contracts, are inherently subject to revision and repeal, and so to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body.  Indeed, the continued existence of a government would be of no great value, if by implications and presumptions, it was disarmed of the powers necessary to accomplish th ends of its creation.  thus, the party asserting the creation of a contract must overcome this well-founded presumption, and we proceed cautiously both in identifying a contract within the language of a regulatory statute and in defining the contours of any contractual obligation.

*Id.* (citations omitted).

Although Section 501(c)(3) contains a list of the types of organizations that may qualify for tax-exempt status, there is no language that demonstrates a clear indication by Congress to create contractual rights.  Instead, § 501(c)(3) only establishes a legislative policy of not taxing the income of certain qualifying entities.

Apparently, Plaintiffs are aware of this flaw in their argument as they seek to have the Court analogize their claim under § 501(c)(3) to contracts implied by some courts

under the Hill-Burton Act, 42 U.S.C. § 291c.[9]  *See e.g., Flagstaff Medical Ctr., Inc. v. Sullivan*, 773 F. Supp. 1325 (D. Ariz. 1991), *aff'd*, 962 F.2d 879 (1992).[10]  The Hill-Burton Act, however, is fundamentally different from § 501(c)(3).  Unlike Section 501(c)(3), Hill-Burton expressly requires hospitals seeking construction grants to agree -- in writing on a form signed by both the hospital and federal authorities -- that the facility will provide "a reasonable volume of [medical] services to persons unable to pay," and specifically conditions the grant of federal funds on that explicit written promise by the hospital.  42 U.S.C. § 291 *et seq*.  Furthermore, the Hill-Burton Act expressly provides for a private right of action to enforce the Act.  *See* 42 U.S.C. § 300s-6.

Section 501(c)(3), however, does not provide for a private right of action.  As the court found in *Burton v. William Beaumont Hospital, supra*,

> [T]he absence of a private right of action under § 501(c)(3) is noteworthy because Congress has established private rights of action in the Internal Revenue Code for other tax-related matters.  *See e.g.*, 26 U.S.C. §§ 7431(a)(1), 7433; *see also Salazar v. Brown*, 940 F. Supp. 160, 166 (W.D. Mich. 1996) (holding that plaintiffs did not have a private right of action under the Federal Insurance Contributions Act (FICA) and noting that "the Sixth Circuit would clearly find it persuasive that Congress has passed thousands of amendments to the . . . Internal Revenue Code, virtually on a yearly basis, without once creating a private right of action.")

---

[9]  The Hill-Burton Act "was designed to promote the construction and modernization of hospitals."  *Baptist Hosp. v. Secretary of Health and Human Services*, 802 F.2d 860, 869 (6th 1986).

[10]  Other courts, however, have expressly rejected the idea of a private contract action under Hill-Burton.  *See e.g., White v. Moses Taylor Hosp.*, 763 F. Supp. 776 (M.D. Pa 1991); *accord, Corum v. Beth Israel Med. Ctr.*, 373 F.Supp. 558 (S.D.N.Y. 1974).

347 F. Supp. 2d at 493.

Plaintiffs contend that in the absence of an explicit cause of action, there is an implied cause of action under *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080 (1975). They maintain that "courts properly infer that when a statute permits the formation of a contract with the government. . . it is proper to infer that Congress intended to permit contractual remedies." [Plaintiffs' Response Brief, p. 13.] This is the very same argument made by the plaintiff in *Lorens v. Catholic Health Partners, supra* which the District Court for the Northern District of Ohio rejected:

> This argument. . . assumes the existence of a contract, a proposition which this court has found has no legal merit. Even if there were a contract, the Supreme Court has reduced the *Cort* inquiry to one simple question: did Congress intend to create a private cause of action. *E.g, Alexander v. Sandoval*, 532 U.S. 275, 286-87, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). In this case, there is no evidence that Congress intended to create a private cause of action. The statute does not describe who may receive the benefits of a 501(c)(3) organization's activities; rather, it describes the types of organizations that may seek tax exemption. Where the statute focuses "on the person regulated rather than the individuals protected. . . [there is] 'no implication of an intent to confer rights on a particular class of persons.'" [Citations omitted.] Accordingly, there can be no implication of an intent to confer a private right of action on Plaintiff in this case. If Congress had wanted to create a private cause of action for the uninsured or for indigent patients, it knew how to do so. *See* Hill-Burton Act, 42 U.S.C. § 300s-6 (permitting private cause of action to enforce Act); 26 U.S.C. § 743(a)(1) (permitting citizen suit against IRS). Since no comparable intent can be found in 26 U.S.C. § 501(c)(3) there can be no private cause of action by a third party.

356 F. Supp. at 833. *See also, McCoy v. East Texas Medical Ctr., supra* 2005 WL 2105966 at * 5; *Peterson v. Fairview Health Services, supra*, 2005 WL 226168 at * 5.

11

The Court agrees with and adopts the *Lorens*' court's analysis and accordingly finds that no implied cause of action exists under § 501(c)(3).

Furthermore, even if there were a contract and an implied cause of action, Plaintiffs would have no standing to enforce such a contract because they are only incidental beneficiaries of the tax exempt status conferred by § 501(c)(3). Incidental beneficiaries of a government contract generally have no standing to enforce the contract. *See Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999). "When members of the public bring suit against promisors who contract with the government to render a public service," they "are considered to be incidental beneficiaries unless they can show a direct right to compensation." *State of Montana v. United States*, 124 F.3d 1269, 1273 n.6 (Fed. Cir. 1997). Clearly § 501(c)(3) does not create a direct right of compensation for indigent or uninsured hospital patients. Instead, § 501(c)(3) only creates a tax exemption for qualifying entities. Because Plaintiffs cannot demonstrate a direct right to compensation under § 501(c)(3), they are only incidental beneficiaries to the contract. Accordingly, the Court joins its sister courts and finds that Plaintiffs lack standing to sue as third-party beneficiaries. *See Lorens v. Catholic Health Care Partners, supra*, 356 F. Supp. 2d at 833-34; *McCoy v. East Texas Medical Ctr., supra*, *Amato v. UPMC, supra,* 371 F. Supp. 2d at 756; *Peterson v. Fairview Health Serv., supra*, 2005 WL 226168 at * 6; *Darr v. Sutter Health, supra*, 2004 WL 2873068 at * 4-5.

12

For all of the foregoing reasons, the Court finds not only that Plaintiffs lack standing to sue as third-party beneficiaries but also that Plaintiffs cannot prove a set of facts to support their claim for third-party breach of contract because there is no legal authority to support the notion that a theory of liability exists based on Trinity Health's status as a § 501(c)(3) organization.  Therefore, the Court will grant Defendants' Motion to Dismiss the federal claims in Count I of Plaintiffs' Complaint.

2.      BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

In Count 3, Plaintiffs allege that the Trinity Health Defendants breached their duty of good fath and fair dealing resulting from the contracts and agreements alleged in Count 1 by:

> failing to provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such care; charging the Plaintiffs and the Class the highest and full undiscounted cost of medical care; charging the Plaintiffs and the Class a higher amount for medical services than they charged their insured patients of their of [sic; or] their Medicare patients for the same services; utilizing aggressive, abusive, and harassing collection practices such as collection lawsuits, liens, and garnishments to collect such outstanding grossly inflated medical debt from the Plaintiffs and the Class; and allowing noncharitable for-profit entities to derive a profit from use of its tax-exempt hospitals.

[Plaintiffs' Complaint, ¶ 81-83.]

A duty of good faith and fair dealing exists only where the parties are bound by a contractual relationship.  *McCoy v. East Texas Medical Ctr., supra*; *Peterson v. Fairview Health Services, supra*. *See also, Okmyansky v. Herbalife Intern. of Am., Inc.*, 415 F.3d 154, 158 n.3 (1st Cir. 2005); *Miller v. ACE USA,* 261 F. Supp. 2d 1130, 1140 (D. Minn.

13

2003); *Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 960 (D. Minn. 2000), *aff'd,* 283 F.3d 1051 (8th Cir. 2002).  As discussed above, a contractual relationship between the federal government and a non-profit entity is not created by § 501(c)(3).  Therefore, Count 3 must be dismissed to the extent it relies on a § 501(c)(3).

3.    BREACH OF CHARITABLE TRUST

Count 4 of Plaintiffs' Complaint alleges that "[b]y accepting federal, state and local tax exemptions under § 501(c)(3), the Trinity Health Defendants created and entered into a public charitable trust to provide mutually affordable medical care to its uninsured patients" and that Trinity Health then allegedly breached that trust by overcharging patients.  [Complaint ¶¶ 86, 88.] Plaintiffs further allege that they are the intended beneficiaries of this charitable trust.  *Id.* at ¶ 87.

This claim is also without merit.  The Court has already concluded that Trinity Health's tax exempt status did not create a contract, and Plaintiffs have presented no allegation other than the bare conclusion that Section 501(c)(3) created a charitable trust.  Charitable trusts require language demonstrating a specific intent to create the trust.  *See* Restatement (Second) of Trusts §§ 348-349.  *See also Lorens, supra*, 356 F. Supp. 2d at 834; *Quinn v. BJC Health Sys., supra*, 365 F. Supp. 2d at 1052; *Amato, supra*, 371 F. Supp. 2d at 757; *Peterson, supra*, 2005 WL 226168 at * 7. There is no allegation in Plaintiffs' Complaint that such specific language exists.

Furthermore, even if a charitable trust existed, Plaintiffs would not be the proper

14

parties to enforce such a trust; rather the Attorney General of the State of Michigan is the

only proper party.  As the court in *Burton v. William Beaumont Hospital* found:

> As a general rule no private citizen can sue to enforce a charitable trust
> merely on the ground that he believes he is within the class to be benefitted
> [sic] by the trust and will receive charitable or other benefits from the
> operation of the trust.  The courts usually require that suits for enforcement
> be brought by the established representative of the charity, the Attorney
> General, so that the trustees may not be vexed by frequent suits, possibly
> based on an inadequate investigation and brought by irresponsible parties,
> and so that the courts may not find their calendars clogged with an
> unnecessarily large amount of litigation.

348 F. Supp. 2d at 494 (quoting Bogert, *Bogert's Trusts and Trustees* § 414 (2004)).  *See*

*also Quinn, supra*, 364 F. Supp. 2d at 1052 (attorney general is proper party to bring

action); *Amato, supra* (collecting authority in support of proposition that, even if a

charitable trust exists, Plaintiffs, as private citizens, lack standing to enforce claim);

*Lorens, supra*, 356 F. Supp. 2d at 834 (finding that under Ohio law, suits to enforce

charitable trusts are to be carried on and conducted in the name only of a public officer).

In Michigan, this principle is codified at M.C.L. § 14.254:

> The attorney general shall have jurisdiction and control and shall represent
> the people of the state and the uncertain or indefinite beneficiaries in all
> charitable trusts in this state, and may enforce such trusts by proper
> proceedings in the courts of this state.

> * * *

> The attorney general is a necessary party to all court proceedings. . . to
> terminate a charitable trust or to liquidate or distribute its assets, or. . . to
> construe the provisions of an instrument with respect to a charitable trust.

M.C.L. § 14.254a(a),(b); *see also Olesky v. Sisters of Mercy of Lansing, Michigan*, 92

15

Mich. App. 770, 777, 285 N.W.2d 455, 459 (1979) (holding that if a charitable trust were created with respect to hospital, the court could not consider the issue of whether the hospital breached the trust because Michigan law assigns prosecution of such violations exclusively to the attorney general).

For the foregoing reasons, Count 4 of Plaintiffs' Complaint will be dismissed insofar as it purports to state a claim based on a charitable trust arising out of § 501(c)(3).

4.   UNJUST ENRICHMENT/CONSTRUCTIVE TRUST

In Count 7 of the Complaint, Plaintiffs assert that the Trinity Health Defendants have been unjustly enriched because they received federal, state and local tax exemptions, and that contrary to its charitable, nonprofit, tax exempt status, the Defendants failed to utilize its substantial net assets and revenues to provide mutually affordable medical care to the Plaintiffs and the Class. [Complaint ¶ 102]. They argue they are entitled to a constructive trust on all profits Trinity Health obtained by charging them the highest and full undiscounted cost of medical care, the difference between the amount the Defendants have charged Plaintiffs and the Class and the amount they have charged their insured patients, and an amount sufficient to provide the Plaintiffs and the Class mutually affordable medical care. *Id.* ¶ 104.

Plaintiffs' claims in this count are identical to the unjust enrichment/constructive trust claims of the plaintiffs in *Peterson* and *McCoy* and in both of those cases the courts rejected the plaintiffs' claims out of hand. This Court finds the reasoning of both the

*Peterson* and *McCoy* courts highly persuasive and accordingly adopts that reasoning herein.

The conclusion that § 501(c)(3) imposes no requirement that hospitals provide mutually affordable medical care to the uninsured spells the demise of this claim as it did with the claims discussed above. Furthermore, even if § 501(c)(3) required qualifying hospitals to provide "mutually affordable medical care," the claim for unjust enrichment is essentially a collateral attack on the IRS's decision to grant Trinity Health tax exempt status. Congress has charged the Secretary of the Treasury with the responsibility to oversee the tax code and only the IRS can challenge a nonprofit organization's tax status. 26 U.S.C. §§ 7801(a), 7428(a). Thus, Plaintiffs have no legal authority to challenge the tax exempt status of a qualified § 501(c)(3) entity. Therefore, Count 7, to the extent that it is premised on § 501(c)(3) must be dismissed, with prejudice.

C.    PLAINTIFFS' EMTALA CLAIM FAILS BECAUSE PLAINTIFFS SUFFERED
      <u>NO DENIAL OF TREATMENT AND SUFFERED NO PERSONAL HARM</u>

In Count 6, Plaintiffs contend that Trinity Health violated the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd ("EMTALA"), by conditioning emergency treatment on their ability to pay for it.

EMTALA requires hospitals with emergency departments to "provide for an appropriate medical screening examination" to determine whether the prospective patient has an "emergency medical condition." *See* 42 U.S.C. § 1395dd(a). If the patient has an "emergency medical condition" as defined under the statute, the hospital must either

17

further examine the patient and provide appropriate treatment to "stabilize the medical condition," or it must provide for transfer of the patient to another medical facility.  42 U.S.C. § 1393dd(b)(1)(A)-(B).  Plaintiffs do not allege that Trinity failed to provide the requisite medical screening and they concede that they did in fact receive medical treatment from Trinity. [*See* Complaint, ¶¶ 50, 53, 54.]

Although they do not specify which provision of EMTALA Defendants allegedly violated, Plaintiffs appear to base their claim on subsection (h) of the statute, which provides that

> A participating hospital may not delay provision of an appropriate medical screening examination. . . or . . . medical examination and treatment. . . in order to inquire about the individual's method of payment or insurance status.

42 U.S.C. § 1395dd(h).

Plaintiffs' Complaint, however, is devoid of any allegations that Trinity Health delayed providing them a medical screening or treatment.  Rather, they merely allege that before Trinity provided them with treatment, it first analyzed their ability to pay and required them to sign forms agreeing to pay Trinity in full for their medical care.  *See* Complaint, ¶ 99.  These allegations are insufficient to state a claim under EMTALA.

As provided in the EMTALA regulations,

> Hospitals may follow reasonable registration processes for individuals for whom examination or treatment is required by this section, including asking whether an individual is insured and, if so, what that insurance is, so long as that inquiry does not delay screening or treatment.

42 C.F.R. § 489.24(d)(4)(iv).  Here, since the Complaint contains no allegation that the

Trinity Health Defendants delayed screening or treating Plaintiffs, their EMTALA claim

fails. *See Amato v. UPMC*, *supra*, 371 F. Supp. 2d at 758; *Jakubiec v. Sacred Heart*

*Health Sys., supra*, 2005 WL 1261443 at * 2.

Plaintiffs' claim is further deficient because, by their own admission, Plaintiffs

only incurred "economic injury and other damages" as a result of the alleged EMTALA

violation. *See* Complaint ¶ 100.

Pursuant to section (2)(A) of the statute, only persons who suffer "personal harm"

as "a direct result of a participating hospital's violation" of the statute may bring a claim

against a hospital. 42 U.S.C. § 1395dd(2)(A) provides:

> Any individual who suffers *personal harm* as a direct result of a
> participating hospital's violation of a requirement of this section may, in a
> civil action against the participating hospital, obtain those damages
> available for personal injury under the law of the State in which the hospital
> is located, and such equitable relief as is appropriate.

(Emphasis added).

Here, Plaintiffs have not alleged that they suffered "personal harm" as a result of

the alleged EMTALA violation. Courts that have considered this issue have concluded

that alleging only "economic injury and other damages" is insufficient to make out an

EMTALA claim. *See e.g., Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707, 716

(E.D. Mich. 2005); *Valencia v. Miss. Baptist Med. Ctr., Inc.*, *supra*, 363 F.Supp.2d at 880

("every court addressing the issue has determined that economic injuries are insufficient

for a showing of personal harm under the EMTALA."); *Quinn v.  BJC Health Sys.,*

19

*supra*, 364 F. Supp. 2d at 1053-54; *Peterson v. Fairview Health Serv., supra*, 2005 WL 226168 at ** 8-9; *Gardner v. North Mississippi Health Serv., supra*, 20o5 WL 1312753 at * 3.

Based on the foregoing, the Court finds that Plaintiffs have failed to plead an actionable EMTALA claim, and Count 6, therefore, will be dismissed.

D.     PLAINTIFFS' FDCPA CLAIM FAILS BECAUSE TRINITY HEALTH IS NOT A "DEBT COLLECTOR" UNDER THE STATUTE

In Count 9 of the Complaint, Plaintiffs purport to allege a claim against Trinity for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA") based upon Trinity Health's actions in attempting to collect amounts due and owing by Plaintiffs for their medical care.

The purpose of The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 is

> . . . to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

15 U.S.C. § 1692(e).

As indicated, the FDCPA applies only to acts of "debt collectors."  The term "debt collector" is defined in the Act as follows:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another

15 U.S.C. § 1692a(6) (emphasis added).

20

The Sixth Circuit construed the FDCPA in *Montgomery v. Huntington Bank*, 346 F.3d 693 (6th Cir. 2003) and, in that case, determined that "the legislative history of section 1692a(6) indicates conclusively that **a debt collector does not include the consumer's creditors**. . . ." *Id.* at 698 (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (emphasis added)). *See also, Wadlington v. Credit Acceptance Corp.*, 76 F. 3d 103, 106 (6th Cir. 1996) (quoting S. Rep. No. 95-382, 95th Cong., 1st Sess. 3, reprinted in 1977 U.S. Code Cong. & Ad. News 1695, 1698);*Aubert v. American Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir. 1998) ("Creditors who collect in their own name and whose principal business is not debt collection. . . are not subject to the Act.")

Other federal courts have likewise held that "creditors are not subject to the FDCPA when they are collecting their own accounts."  *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 794 (W.D. Ky. 2003); *see also Vitale v. First Fidelity Leasing Group*, 35 F. Supp. 2d 78, 81 (D. Conn. 1998) (holding that "[a]lthough there are allegations to suggest that [the automobile leasing and financing company] was collecting a debt, the debt was one owed to it and thus its activities are not covered by the FDCPA"), *aff'd*, 166 F.3d 1202 (2nd Cir. 1998); *James v. Ford Motor Credit Co.*, 842 F. Supp. 1202, 1206-07 (D. Minn. 1994), *aff'd* 47 F.3d 961 (8th Cir. 1995) (same).

In *Bleich v. Revenue Maximization Group, Inc.*, 239 F. Supp. 2d 262 (E.D.N.Y. 2002) the Court granted the defendant hospital's motion for summary judgment on the plaintiff's FDCPA complaint.  The court found that the hospital was a creditor, and not a "bill collector" according to the definition in the Act, because the debt that the defendant

21

sought to collect was owed to the hospital, rather than owed to another. The court recognized that, "by its terms, the FDCPA, limits its reach to those collecting the debts 'of another' and does not restrict the activities of creditors seeking to collect their own debts." *Bleich*, 239 F. Supp. 2d at 264 (citing *Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232, 235 (2d Cir. 1998). *See also Zsamba v. Community Bank*, 63 F. Supp. 2d 1294, 1299-1300 (D. Kan. 1999) (finding that a creditor bank collecting on its own debt falls outside the purview of the FDCPA).

Consistent with the foregoing authorities, courts dealing with this issue in the not-for-profit/uninsured patient cases have found that the hospital/health system defendants were at most "creditors," not "debt collectors" for purposes of the FDCPA. *See e.g., Burton v. William Beaumont Hosp., supra*, 347 F. Supp. 2d at 496-97;*Kolari v. New York-Presbyterian Hosp., supra*, 2005 WL 710452 at ** 6-7 *Darr v. Sutter Health, supra*, 2004 WL 2873068 at * 5. *Cf., Carlson v. Long Island Jewish Med. Ctr.*, 378 F. Supp. 2d 128 (E.D.N.Y. 2005) (motion to dismiss FDCPA claim denied where complaint alleged that the hospital attempted to collect its debts with the assistance of a collection agency, Regional Claims Recovery Service, that was alleged to have created the false impression that debts were being pursued by a third party).

In this case, there is no allegation that debts were collected by a third party; rather, it was Trinity Health, the creditor itself, that attempted to collect its own debts from Plaintiffs and there is no allegation that Trinity Health used a name other than its own which would indicate that a third person was collecting or attempting to collect such

22

debts.  Under these circumstances, Plaintiffs' FDCPA claim fails.  Accordingly, Count 9 of Plaintiffs' Complaint will be dismissed.

E.     PLAINTIFFS' SECTION 1983 CLAIMS FAIL BECAUSE DEFENDANTS <u>ARE NOT "STATE ACTORS"</u>

In Count 10, Plaintiffs seek recovery under 42 U.S.C. § 1983 for violation of their Fifth and Fourteenth Amendment rights, which Plaintiffs claim to be equal protection claims based on "discriminatory excessive overcharges for uninsured patients." [Complaint ¶ 134.]

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

To state a viable claim for relief under § 1983, a plaintiff must establish that (1) the defendant acted under color of state law; (2) the conduct deprived the plaintiff of constitutional rights, and (3) the deprivation of rights occurred without due process of law.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49 (1989).  The "under color of state law" element of § 1983 means that "merely private conduct, no matter how discriminatory or wrongful" is not actionable under § 1983.  *Sullivan,* 526 U.S. at 50 (citing *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)).

Plaintiffs allege that Trinity Health is a state actor because (1) it is obligated to

23

comply with Medicare and Medicaid regulations (Complaint, ¶ 116); (2) it receives the benefit of federal, state and local tax-exempt status and receives "charity care subsidies" from the State of Michigan (Complaint, ¶ 123); (3) federal and state laws require Trinity to charge inflated undiscounted rates for uninsured patients (Complaint, ¶ 124); (4) Trinity acted pursuant to contracts with federal and state governments (Complaint, ¶ 127); (5) Trinity relies extensively upon government assistance and benefits (Complaint, ¶ 130), and (6) Trinity used state collection laws to obtain judgments and garnish patients' wages or seize patients' bank accounts (Complaint, ¶ 136).

It is well-established, however, that private hospitals, even those receiving federal and state funding and tax-exempt status, are not state actors under § 1983. *See e.g.,* *Crowder v. Conlan*, 740 F.2d 447, 449-453 (6th Cir. 1984) (private hospital not a state actor for purposes of § 1983 despite fact that it derived revenue from government sources, was heavily regulated, had public officials on its board of directors, and was purchased by the county and leased back to the board of trustees); *Jackson v. Norton-Children's Hospitals, Inc.*, 487 F.2d 502, 503 (6th Cir. 1973), *cert. denied*, 416 U.S. 1000 (1974) (private hospital not a state actor even though it received Hill-Burton funds and was heavily regulated); *Sarin v. Samaritan Health Ctr.*, 813 F.2d 755, 759 (6th Cir. 1987) (holding that plaintiff failed to state a claim under § 1983 because state regulation of hospital and receipt of Medicare and Medicaid funds do not establish state action); *Johnson v. Southwest Detroit Comm. Mental Health Serv.*, 462 F. Supp. 166 (E.D. Mich.

24

1978) (private, not-for-profit, tax-exempt hospital held not a state actor despite fact that it was heavily regulated and was largely government-funded); *Jeung v. McKrow*, 264 F. Supp. 2d 557 (E.D. Mich. 2003) (dismissing § 1983 claim because "private hospitals operating as not-for-profit entities under the Internal Revenue Code and receiving public funds through federal welfare programs are not thereby converted into state actors within the meaning of section 1983."). This is so even where the hospital uses state collection laws to obtain judgments against patients for unpaid fees. *See Sullivan, supra*, 526 U.S. at 53 (the private use of state-sanctioned private remedies or procedures does not rise to the level of state action).

Not surprising, then, is the universal dismissal of § 1983 claims in the not-for-profit/uninsured patient cases. *See e.g., Burton v. William Beaumont Hosp., supra*, 347 F. Supp. 2d at 498-99; *Kolari v. New York-Presbyterian Hosp., supra*, 2005 WL 710452 at * 9.

For the reasons discussed above, this Court finds that Plaintiffs have failed to state a claim for relief against Trinity Health under Section 1983. Accordingly, the Court will dismiss Count 10 of Plaintiffs' Complaint.

F.    THE COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION
       OVER PLAINTIFFS' STATE LAW CLAIMS

As set forth above, Plaintiffs' Complaint also seeks relief under various theories of state law. 28 U.S.C. § 1367(c)(3) provides, in pertinent part:

The district courts may decline to exercise supplemental jurisdiction over a

25

> [pendent state law] claim . . . if (1) the claim raises a novel or complex
> issue of State law, (2) the claim substantially predominates over the claim
> or claims over which the district court has original jurisdiction, (3) the
> district court has dismissed all claims over which it has original jurisdiction
> , or (4) in exceptional circumstances, there are other compelling reasons for
> declining jurisdiction.

The Supreme Court has indicated that "[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614 (1998).

Having dismissed all of the Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over the Plaintiffs' state law claims. Therefore, the Court will dismiss Plaintiffs' remaining state law claims, without prejudice.

## CONCLUSION

For all of the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss is GRANTED. Accordingly,

IT IS FURTHER ORDERED that Plaintiffs' federal claims in Counts 1, 3, 4, and 7 which are all predicated upon Defendants' alleged violation of 26 U.S.C. § 501(c)(3); and Plaintiffs other federal claims in Count 6 (violation of the EMTALA); Count 9 (violation of the FDCPA); and Count 10 (Section 1983 claims) are DISMISSED with prejudice.

26

Having dismissed all of the claims in Plaintiffs' Complaint over which the Court has original subject matter jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.  Therefore,

IT IS FURTHER ORDERED that Plaintiffs' state law claims are hereby DISMISSED without prejudice.

Let Judgment be entered accordingly,


s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  September 30, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2005, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager